CHARTRAND ET AL. V. BRACE.

1. A SOCIETY MAY BE A MUTUAL INSURANCE COMPANY.— The society known as the " Ancient Order of United Workmen," so far as it is engaged in the business of life insurance, must be treated in law as a mutual life insurance company.
2. A CERTIFICATE OF INSURANCE A WRITTEN CONTRACT.— The certificate of insurance is to be regarded as a written contract, and, so far as it goes, it is the measure of the rights of all parties.
3. VESTED RIGHTS FAVORED.— It is the policy of the law to favor vested, rather than contingent, estates.
4. AN INSURANCE POLICY TREATED AS A WILL.— A policy of life insurance is in the nature of a testament, and although not a testament, in construing it the courts will so far as possible treat it as a will.
5. INSURANCE CERTIFICATE MAY BECOME A VESTED RIGHT.— Under a certificate providing that upon the death of a member the insurance

shall be paid to his wife, and in case of her death to his children, the right to the fund vests in the surviving wife immediately upon the death of the husband, and upon her death the fund passes to the administrators as a part of her estate.

### Appeal from District Court of Boulder County.

IT appears from the record in this case that in September, 1886, the Ancient Order of United Workmen, a secret society organized and established for the purpose, among other things, of insuring the lives of its members, issued to one Sterling D. Rouse, a member of the order, a certificate of insurance in the following words and figures, omitting the formal parts, to wit:

" This certificate, issued by the authority of the Supreme Lodge of the Ancient Order of United Workmen, witnesseth, that Brother Sterling D. Rouse, a master-workman degree member of Centennial State Lodge, No. 8 of said order, located at Boulder, in the state of Colorado, is entitled to all the rights and privileges of membership in the Ancient Order of United Workmen, and to participation in the beneficiary fund of the order to the amount of $2,000, which sum shall at his death be paid to his wife, Ella A. Rouse, and, in case of her death, to Mary E., Clara D. and Anna L. Rouse, children. This certificate is issued upon the express condition that said Sterling D. Rouse shall in every particular, while a member of said order, comply with all the laws, rules and requirements thereof."

On December 30, 1886, said Sterling D. Rouse died, leaving his said wife and children him surviving. In less than one month thereafter, January 28, 1887, and before any portion of the insurance money had been paid to the wife, she also died.

Appellee Brace, having been appointed administrator of said Ella A. Rouse, commenced this suit in the county court against the Order of United Workmen, to recover the insurance as part of said Ella's estate. The children named in the certificate also claimed the benefit of the in-

surance.  The defendant appeared and requested to be per-
mitted to deposit said sum of $2,000, "subject to the order
of the court, according to the very right of the case;" and
it was accordingly so ordered, and the defendant was dis-
missed as a party.  Mary E. Chartrand, formerly Mary E.
Rouse, Clara D. Rouse and Anna L. Rouse, minors (said
last two appearing by John H. Nicholson, their guardian),
were substituted as parties to the action in place of defend-
ant, for the purpose of enabling them to assert in this ac-
tion their claim to the insurance money.

Judgment having been rendered in the county court, the
action was appealed to the district court, where an amended
answer was filed in behalf of said children and their guard-
ian, claiming the insurance money.  The amended answer
shows, *inter alia*, that the children named in the certificate
of insurance are the children of said Sterling D. Rouse by
his first wife, who died many years before; that they were
his only children, and with his said wife, Ella, were the only
members of his family dependent upon him for support;
that his said wife, Ella, was, and had been for years, an in-
valid, and left no surviving children.  The amended answer
further shows: "That said Grand Lodge of the A. O. U. W.
is a voluntary beneficiary association, not incorporated;
that its constitution and laws in force at the time said Ster-
ling D. Rouse became a member, and when he died, pro-
vided, among other things, that the beneficiary or benefi-
ciaries named in the certificates issued to members should
be confined to one or more of the family of the members,
or some person or persons related to him by blood, or who
shall be dependent upon him; that the amount of the ben-
eficiary certificate upon the death of its members shall be
collected by assessments upon its members, the assessment
to be made upon the first day of the next month after re-
ceiving notice from the recorder of the lodge of which the
deceased was a member, and payment by the members is
voluntary, and cannot be enforced, except by suspension of
the members; that notice of the death of said Sterling D.

Rouse was received by the grand recorder of the said Grand Lodge of the A. O. U. W., January 11, 1887; that the assessment to pay the beneficiaries named in his certificate was not in fact made until and on March 1, 1887, and the money to pay the same was not collected and in the treasury of said grand lodge, and proper officers ready to draw warrant and pay the same, until the 27th day of March, 1887."

Upon motion of the administrator, the district court rendered judgment upon the pleadings in his favor, from which judgment this appeal is taken.

Mr. CHAS. M. CAMPBELL, of Boulder, and Mr. JAMES M. NORTH, for appellants.

Mr. O. F. A. GREENE, for appellee.

MR. JUSTICE HAYT delivered the opinion of the court.

The amended answer admits, by failing to deny, the facts as stated in the complaint, and for the purposes of this appeal the new matter set up in this answer must also be taken as true. Upon these facts the position of appellee is that upon the death of the insured the right to the fund vested absolutely in the wife, Ella A. Rouse, and that upon her death the right to the uncollected fund passed as part of her estate to her administrator, to be by him disposed of as other assets of the estate. The contention of appellant is that, as the fund had not been paid over or collected at the time of the death of the wife, the right thereto became vested in the children under the terms of the policy.

The certificate is, in legal contemplation, a policy of life insurance, and to be construed as such. That the amount can only be collected by assessment upon members of the association after due notice of death, and the payment of such assessment is purely voluntary, can make no difference. The association, so far as it is engaged in the business of life insurance, must be treated in law as a mutual

life insurance company. The certificate is to be regarded as a written contract, and, so far as it goes, it is the measure of the rights of all parties. *Bolton v. Bolton*, 73 Me. 299; *Com. v. Wetherbee*, 105 Mass. 149; *State v. Association*, 18 Neb. 281; *Wiggin v. Knights of Pythias*, 31 Fed. Rep. 122; *Knights of Honor v. Nairn*, 60 Mich. 44; *Insurance Co. v. Horner*, 14 Colo. 391.

Turning to the policy executed in this case, we find the disposing clause to be couched in the following language: "Which sum shall at his death be paid to his wife, Ella A. Rouse, and in case of her death to Mary E., Clara D. and Anna L. Rouse, children." It would be difficult to find language to more clearly and definitely fix the time at which the right to this money vested in Ella A. Rouse than the words "at his death."

It is claimed, however, that the words following, "in case of her death, to Mary E., Clara D. and Anna L. Rouse, children," qualify the words immediately preceding, and that when construed together they give to the children a right to the fund so long as the same is capable of practical identification and control, and has not been otherwise appropriated by the wife, although the wife in fact survives the husband. But the plain intent of the language of the policy is against such construction. The words, "which sum shall at his death," fix the time at which the right to the fund is to be determined, and the words following provide for the payment to the children in case the wife shall not be living at that time. The children were only to receive the money upon the happening of certain contingencies. The risk taken by the association was upon the life of the assured. By his death the policy became fixed, and the right to the fund vested. The wife having survived the husband, her right became absolute by the express terms of the policy. This construction finds support not alone in the language of the contract, but is also in accordance with the settled policy of the law, which is to favor vested, rather than contingent, estates — the first, rather than the second, taker. *King v. Trick* (Pa.), 19 Atl. Rep. 951;

*Smith's Appeal*, 23 Pa. St. 9; *Womrath v. McCormick*, 51 Pa. St. 504; *Felton v. Sawyer*, 41 N. H. 202; 2 Redf. Wills, *253; *Association v. Montgomery*, 70 Mich. 587.

A policy of life insurance is in the nature of a testament, and, although not a testament, in construing it the courts will, so far as possible, treat it as a will. *Bolton v. Bolton*, *supra*. In *King v. Trick*, *supra*, an absolute devise was made by a father to his son, followed by a proviso to the effect that, in case the devisee should die without children, grandchildren or wife living, the estate should go over. The words "die without children," etc., were held to refer to the death of the son in the life-time of the testator, and the son having survived the testator was declared the owner of the fee.

The case of *Association v. Montgomery*, *supra*, is in some respects quite analogous to the case at bar. It was provided by the certificate issued in that case that the insurance should be paid to the son and daughter of the insured equally, if living, and, if not living, to his heirs; in case of the death of either the son or daughter, the full amount was to be paid to the survivor; and the court held the provision as to survivorship related to the time of the death of the donor. And it appearing that both beneficiaries were living at that time, although one had died before the payment of the benefit, his executor was entitled to the share, and not the survivor. In the course of the opinion the court said: "The scheme of the corporation is to raise a fund which shall pass to designated beneficiaries at the death of a member. The right, which before was inchoate and contingent, becomes upon the death of the member fixed and certain in the beneficiary. * * * The time of payment provided for, namely, ninety days after the death of the member, has no reference to who shall take as survivor."

So, in the case at bar, we are of the opinion that, by the express terms of the policy, the right to the fund became vested in Ella A. Rouse upon the death of her husband. Consequently, upon her death, the fund should pass to the

administrator as a part of her estate. There is nothing in the constitution or by-laws of the association, as pleaded, to change this result. Whatever rights, if any, may have been reserved to the society by these instruments, have been waived by it, and the fund deposited subject to the order of the court.

While we feel that our conclusion as to the party entitled to the fund must necessarily follow as a matter of law, in answer to the argument of counsel based upon the duty of the deceased father to provide for his children, it may be said that it was equally his duty to provide for his invalid wife. She was the person having the strongest claim upon his estate and bounty. If the construction contended for by counsel be adopted, the wife could not use the fund, no matter to what extremity she may have been driven in the final sickness intervening between the death of her natural and legal protector and her own death. She could not, by anticipating the payment of the legacy, surround herself with the things that might have been absolutely necessary to sustain her life from day to day.

In addition to this, it would place the beneficiary primarily entitled to the fund to a great extent within the power of the insurer. For instance, by withholding payment, the beneficiary would be compelled to bring suit for the money, the ultimate decision of which might be delayed for years; and if, during the time, the wife should die, others would receive the reward of her endeavors without sharing the expense. Under such circumstances, it is easily to be seen that the insurance corporation or association could compel the wife, in many instances, to accept less than the face of the policy, rather than institute a suit, no matter how clear her right of recovery might be.

We think the judgment of the district court is right, and it is accordingly affirmed.[1]

*Affirmed.*

---

[1] The former opinion of the court delivered by MR. JUSTICE ELLIOTT is withdrawn.

MR. JUSTICE ELLIOTT (*dissenting*).  I cannot concur in the foregoing opinion.  In the original investigation of this case the various questions involved in the record were care. fully considered.  By the re-argument nothing essentially new has been presented.  Hence I now feel constrained to refile the former unanimous opinion of this court as an expression of the reasons for my present dissent.  The part relating to the construction of the certificate was as follows:

" While the certificate is to be construed as a contract, nevertheless, it being in the nature of a policy of insurance,— a *post-mortem* provision for the benefit of those dependent upon the assured for support,— it is, like the provisions of a will, to be liberally construed in favor of those who may naturally be presumed to have been the objects of their father's bounty.

" In order to correctly understand and give effect to the contract over which this controversy has arisen, certain rules for the interpretation and construction of written instruments will be noticed.  Primarily to be considered is the intention of the husand and father in effecting the insurance, and this is to be ascertained from the language of the certificate itself, construing its words according to their common and reasonable signification, so as to give effect to the entire instrument as far as practicable; *secondly*, the language of the instrument is to be construed in the light of extrinsic circumstances attending its execution, considering the situation and relations in life of the several parties therein mentioned, and the objects and interests to be thereby secured.  We are not unmindful of the rule which excludes the proof of contemporaneous oral language to vary the terms of valid written instruments.  2 Bl. Comm. pp. 379–381; 1 Redf. Wills, pp. 421, 663; 1 Greenl. Ev. §§ 275–277; *Mining Co. v. Tierney*, 5 Colo. 582; *Ballou v. Gile*, 50 Wis. 614; *Clarke v. Boorman*, 18 Wall. 502, 503; *McDermott v. Association*, 24 Mo. App. 73; *Walker v. Douglas*, 70 Ill. 445; *Society v. Fietsam*, 97 Ill. 474.

" What, then, was the intent of the assured in causing to

be inserted in the certificate of insurance the provision that the money should, 'at his death be paid to his wife, Ella A. Rouse, and, in case of her death, to Mary E., Clara D. and Anna L. Rouse, children?'

"It is claimed by counsel for the administrator that by the terms of the certificate the right to the insurance money vested in Ella A. Rouse immediately upon the death of her husband. This claim is based upon the words of the certificate that the money shall 'at his death be paid to his wife, Ella.' But these are not the only words of the instrument relating to that subject. It also contains the words, 'in case of her death;' that is, it is further provided that in case of the death of the wife, Ella, the money shall be paid to Mary, Clara and Anna, children of the assured. In argument, however, counsel have sought to maintain the administrator's claim by construing the certificate — *First*, as though the children were not named therein as beneficiaries; and *second*, as though they were only entitled to the insurance in case the wife should die *before the death of the assured*. The argument is not well founded. It violates an elementary rule for the construction of contracts, in that it does not give effect to the whole language of the instrument. In the first instance it omits, and in the second adds, important words. The effect of the addition, as well as the omission, is to defeat the clearly expressed intention of the assured. It is true the certificate was framed so that the wife's right vested immediately upon her husband's death, but such right was not indefeasible. On the contrary, it was subject to be divested by her own death. The certificate expressly provides that, in case of the wife's death, the insurance shall be paid to the children; and thus provision was made for the vesting of the children's rights just as surely as for the vesting of her own. This last provision is in no way limited or qualified as to the time of her death; it is direct and unequivocal to the effect that, in case of the wife's death, either before or after the death of the assured, the money shall be paid to the children named

in the certificate. The intention is clear that, in the event of the wife's death *at any time* while the insurance money should be unpaid, so as to be capable of practical identification and control, it should be paid to the children; thus giving them the greatest advantage that could arise from such a contingency, so long as the fund should not be otherwise appropriated by the wife. Thus effect is given to the entire certificate without doing violence to its obvious meaning or to any of its words; and thus a construction is reached in accordance with well-settled legal rules, as well as in harmony with the dictates of reason and humanity.

" The adjudicated cases cited in behalf of the administrator's claim do not necessarily militate against the foregoing construction. In the case of *Richmond v. Johnson*, 28 Minn. 447, the wife only was named as the beneficiary in the certificate. In the case of *Insurance Co. v. Burroughs*, 34 Conn. 305, the policy was made payable to the children only in case the wife should die *before* her husband's death should occur; and in *Chapin v. Fellowes*, 36 Conn. 132, the policy contained a similar provision. In each of the Connecticut cases the wife died *before* the husband. In the former case the wife had made an absolute assignment of her interest in the policy for a valuable consideration, but the children nevertheless were allowed to recover against the claim of the assignee. In the latter case the children were protected against the claims of the creditors of the husband. Thus it appears how jealously the rights of beneficiaries of such insurance, even in the second degree, are guarded by the courts.

" Our attention has not been called to any case where the provisions of the policy or certificate of insurance were identical, or so nearly analogous to the one under consideration as to affect our conclusion. It is always safer to be guided by legal principles, founded on justice and equity, than to attempt to follow case precedents based on facts or circumstances not strictly analogous or controlling. In

this connection we quote the language of an eminent author upon the construction of instruments of this character: 'Precedents ought never to be allowed an arbitrary and unbending control of any case not precisely analogous; we might say, not strictly identical. And while all analogies, however remote, must be, and should be, allowed to have their just and proper weight, and the more weight, in proportion to the nearness of the analogy, in determining future cases, we ought never to forget that mere analogies never rise above the character of assistants. We should not, therefore, allow ourselves to become slaves to them.'

"Again, after adverting to the fact that the English courts follow precedents in matters of this kind more strictly than do the American tribunals, the same author adds: 'But, at the same time, when cases occur, as will always be the fact in regard to the largest proportion, which have to be determined upon their peculiar circumstances, the English courts manifest no reluctance to grapple with the difficulties which present themselves, *however formidable or embarrassing*, and to place all cases upon their proper basis of truth and justice, without regard to the entire want of precedent to maintain them.   *   *   * And the same tendency is observable in decisions of the American courts.'   1 Redf. Wills, p. 423.

"Reading the certificate in the light of the extrinsic circumstances as shown by the amended answer, and considering the condition of the assured and of the different members of his family, and the relations they sustained to each other at the time of effecting the insurance, no one can doubt for a moment that it was the father's intention that the insurance money should be paid to his infant daughters in case his invalid wife should die either before his own death should occur, or before the money should be paid to her. These children were his legitimate heirs, dependent upon him for support, and, next after his wife, the natural objects of his bounty. They were not the children of his wife, Ella, and could not inherit from her; hence we

perceive his prudent foresight, as well as fatherly care, in causing their names to be inserted as beneficiaries in the certificate, contingent upon his wife's expected death.

" If anything further were needed to strengthen the construction we have given this instrument, the objects, purposes, rules and regulations of the benevolent order from which this certificate of insurance emanated might be considered. But it is scarcely necessary to invoke cumulative authority to confirm the view that it was the father's intention, in case of his wife's death, that the insurance money should go to his doubly orphaned minor children, instead of the administrator of the deceased wife, either for the payment of her debts, or for the benefit of her heirs, who were to him as strangers, having no special claim upon his fortune, his benevolence, or the fruits of his labor." *Henry v. Thomas, Ex'r, etc.*, 118 Ind. 27.

In the opinion on the rehearing, the majority of the court place great reliance upon the case of *Association v. Montgomery*, 70 Mich. 587. That case, to use the language of Judge Redfield, quoted in the former opinion, is neither "precisely analogous" nor "strictly identical" with the one now under consideration. In that case the certificate was for $1,500 upon the life of Edward C. Franklin, payable ninety days after satisfactory proof of his death, and the concluding clause was as follows: "The said Union Mutual Association agrees to pay to his son and daughter, N. Lyon and Charlotte A. Franklin, equally,— in case of death of either, full amount to go to the survivor,— $1,500, if living; if not living, to the heirs of said member."

Both beneficiaries were living at the death of the assured. Satisfactory proofs of the death of the assured were made, and both beneficiaries claimed payment of their respective moieties; but before the money was paid one of the beneficiaries died, leaving a will by which his interest in the certificate was disposed of. The court held that the words "if living" and "if not living" refer to living at the time of the assured's death; and that the share of each

beneficiary vested absolutely at the death of the assured, for the reason that the policy of the Michigan statutes favors vested estates in preference to contingent, *unless an intention appears to the contrary*, and that the share of the deceased beneficiary could be disposed of by his last will.

It is unnecessary to question the correctness of the Michigan decision in construing the instrument before us. In that case it was necessary to construe the words " if living" and " if not living " with reference to some particular date or event connected with the vesting of the fund specified in the certificate. No such necessity exists in the case before us. The certificate does not contain the words " if living" or " if not living," or other equivalent words; but, as was said in the former opinion, the provision in regard to the children's interest " is in no way limited or qualified as to *the time* of the wife's death;" so that, whether the wife be living or not living at the death of the assured, the direct and unequivocal provision of the certificate is that, " in case of her death," the money shall be paid to the children named therein. It does not appear in the record before us that the wife, either by will or otherwise, ever attempted to dispose of the insurance money, or of her interest in the certificate. If she had needed the fund to provide for her necessities while living, and had actually disposed of or hypothecated it for that purpose, as indicated in the present opinion of the majority of the court, and such fact had been properly pleaded, perhaps the claim of the children might have been defeated in whole or in part for that reason. But it is vain to speculate as to matters not set forth in the record.

Much stress is laid upon the rule that the law favors vested estates in preference to contingent, unless an intention appears to the contrary. It will be noticed that the rule thus stated is pregnant with two very important and significant admissions: *First*, that contingent estates may be created; and *second*, that the intention of the parties creating an estate is to be considered in determining its

character. Let us test the certificate in the light of this rule. It cannot be denied that a contingent estate is contemplated by its express terms; indeed, a series of contingencies are contemplated. In the first place, the very object of procuring the certificate of insurance was to provide for the family of the assured in the contingency of his own death, while they, or some of them, were living. The first contingency was that the insurance money should be paid to his wife. Thus far there is no dispute. It is also undisputed, that, in a certain contingency, the insurance should be paid to his children. What was the latter contingency? It is plainly stated in the certificate to be the contingency of the wife's death — no more, no less. There are no other words limiting or qualifying the latter contingency. *First*, then, the husband, anticipating his own death, procures the insurance for his wife's benefit. *Second*, knowing that his wife, according to the course of nature, must certainly die sometime, he provides that, in case of her death, the insurance shall be paid to his children. The wife being an invalid, and presumably older than his minor children, it is reasonable to presume the assured expected them to survive her death. In the light of such facts and circumstances, what intention is conveyed by the terms of the certificate? The entire operative words have been considered. Nothing has been added thereto or subtracted therefrom. Legitimate facts and circumstances only have been taken into consideration in construing the language of the written instrument. The reasonable legal inference to be drawn from such language, under the circumstances, is that the father intended the insurance should go to the invalid wife for her use while living, with remainder to his own children in the contingency of the wife's death whenever it should occur; and so he used the unlimited words, in case of her death to be paid to the children, inasmuch as they could not inherit from their step-mother. Words might have been inserted in the certificate providing for the payment of the insurance to the children only in the contin-

gency of the wife's death *before the death of the assured.* If such words had been inserted, they would necessarily have controlled the interpretation of the instrument. But such words were not inserted, and they certainly should not be supplied by implication, when, from all the facts and circumstances legitimate to be considered in construing the instrument, the obvious effect of supplying them, as contended by appellee, would be to defeat, not to effectuate, the intention of the assured.

In the many elaborate briefs and arguments of counsel for the administrator it is nowhere claimed that Sterling D. Rouse could or did have any intention of making provision for strangers to the exclusion of any member of his own dependent family. But the contention is that a certain " formula of words " used in the certificate has been construed by the courts to have a certain and definite signification, and that this court should feel itself bound by such precedents. As heretofore shown, no case has been cited in which the language was " precisely analogous " or " strictly identical" with the certificate under consideration ; nor has any case been cited where the circumstances and relation of the parties to be affected by the instrument were either precisely or substantially analogous to those under consideration.

It has been before observed, and it can scarcely be made clearer by repetition, that the courts, especially the American courts, will not allow themselves to become slaves to " arbitrary and unbending " precedents, when the effect of such servility is to do manifest injustice. But they will rather " grapple with the difficulties which present themselves, however formidable or embarrassing," in each particular case, and determine the same with reference to its " peculiar circumstances," placing the decision " upon the proper basis of truth and justice without regard to the entire want of precedent." 1 Redf. Wills, *supra.*

The law is not, and in the nature of things cannot be, an exact science, like mathematics. Long ago able jurists gave

up the idea of formulating specific rules adapted to the exigencies of each particular case. At the best, the law is but a rational science, founded on general principles of right and justice. Experience has shown that these principles, when intelligently and conscientiously applied, insure substantial justice in the larger proportion of litigated controversies. In mere matters of procedure, which are but the means to the end, specific rules of comparative uniformity may be formulated, and many precedents may be thereby established, though, even in this branch of the law, much must necessarily be left to sound judicial discretion. But in the great field of jurisprudence, relating to rights of persons and rights of property, arbitrary and unbending precedents have ever been found too narrow for the multitude of vexatious and complicated controversies arising from the varied transactions of an enlightened and progressive people. Precedents are valuable aids to those who can utilize them with intelligent discrimination; but to those who are dependent upon such assistants, precedents are liable to become uncertain and misleading guides.

*Affirmed.*