No. 24674

**Rodney Wolford v. The People of the State of Colorado**
(496 P.2d 1011)

Decided May 1, 1972.

Peter H. Ney, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Richard G. McManus, Jr., Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Rodney Wolford was convicted of the crime of conspiracy to possess narcotic drugs in violation of C.R.S. 1963, 40-7-35. He was denied probation and was sentenced to the state penitentiary. His motion under Crim. P. 35 to vacate and correct his sentence was denied and he brings error to review the order of denial. We affirm.

On November 19, 1967, Wolford was arrested at Stapleton International Airport while he was meeting two friends who were apprehended in the act of transporting a substantial quantity of hashish into Colorado from California. Thereafter, on December 21, 1967, Wolford and one Douglas Redmond were jointly charged with the crimes of possession of narcotic drugs and conspiracy to possess narcotic drugs in the Denver District Court.

At trial, at the conclusion of the People's evidence, Wolford's motion to dismiss the count of possession of narcotics was granted. He thereupon withdrew his plea of not guilty and entered a plea of guilty to the conspiracy count. He applied for probation. An extensive report of the probation department was submitted for the court's consideration.

The probation report outlined Wolford's activities in the "drug community." It stated in part:

"Mr. Wolford when questioned regarding his participation in the present case again reiterated essentially the same information that appears on the front sheet of the application for probation and readily acknowledged his part as expressed in the official version of the police offense submitted to the District Attorney. He relates he has been dealing with narcotics, LSD, marijuana, etc. since approximately December of 1966 and that approximately one month later he started selling various drugs. He states that he himself has experienced several 'bad trips' with LSD such as 'disorganization in perception' and readily acknowledges that he has 'turned on' numerous people in the Denver area, mostly friends of his. Wolford maintains that he has discontinued his involvement with narcotics and has made a serious attempt to better himself, as indicated by his 3.33 (4.0 equals 'A') average at Metropolitan State College after completing 18 hours.

\* \* \*

"On June 6, 1967, Wolford was living in the Capitol Hill area with Steve Woody and was selling LSD and marijuana to the hippie element.

"Wolford has been a major supplier of LSD, marijuana and hashish to the hippie element in Denver for the past years. He is able to borrow large sums of money and then repay the loaner within a week's time. It is felt by Narcotics Bureau members that Wolford has not ceased his activities and will be active in selling narcotics and dangerous drugs as long as he remains on the street."

The report further indicated Wolford had been convicted in the United States District Court of the illegal sale of LSD and was sentenced to seven months in jail, which conviction he had appealed. Further, Wolford had been charged on March 28, 1967, in the Denver District Court with the illegal possession of marijuana. (This latter charge was dismissed upon Wolford's guilty plea to conspiracy.) Additionally, the report contained detailed information concerning Wolford's social history, including his home background, education, employment record, financial condition, together with character references, and, finally, a recommendation that probation be denied.

At the probation hearing, Wolford was represented by counsel. A copy of the probation report was furnished to Wolford and his counsel prior to the hearing. Counsel made an extensive plea in behalf of his client and having opportunity to refute any statement in the report, did not do so. Wolford's mother also spoke on his behalf. In the course of the colloquy, the court stated:

"The Court is going to deny probation in this matter. The Court feels that counsel realizes that the Court, when he finds a young person who just has an isolated case where he's in possession of marijuana or under the new statute, L.S.D., the Court has sympathy for this type of person, and seeks to salvage him for society. However, this isn't an isolated case, and Mr. Wolford has made his living as a pusher. It's obvious from this report. The Court is fully cognizant he was not charged with selling marijuana, but he was attempting to get possession of marijuana — I mean hashish and L.S.D., in order to put it on the market and to make great profit out of it. Now, a person who makes a profit from violating the law

has no sympathy in this Court."

Wolford's right of allocution was honored and the court then sentenced him to not less than five nor more than ten years in the state penitentiary.

■ The motion under Crim. P. 35 to vacate and correct the sentence asserted that the sentence was imposed in violation of the Constitutions of the United States and of the State of Colorado, in that defendant was denied the opportunity to confront the witnesses furnishing the information contained in the probation report which he contends was incorrect and prejudicial to him. At the hearing on this motion, Wolford was permitted to testify concerning the truth of the matters contained in the probation report and to give his explanation of them. The record supports the court's denial of the motion.

Here, while Wolford recognizes that he has no right to probation, he contends the proceedings at which the determination of the application for probation was made were not conducted in conformity with law and the requirements of due process. He argues that a decision by the trial court denying probation and imposing sentence must be based upon evidence presented at the hearing; that the court's findings that the defendant was a "pusher" and had "profited from violating the law" were not supported by any evidence; and that, therefore, the sentence should be vacated and a new sentencing hearing be granted. We disagree with these contentions.

■ The statute requires that the trial court, before granting or denying an application for probation and before imposing sentence, shall be advised by a written report from the probation officer of any prior criminal record of the defendant and of such information about his characteristics, his financial condition, and circumstances affecting his behavior, and any other information as may be required by the court, as may be helpful in determining the advisability of granting probation, or as may be helpful, in imposing sentence in the event probation is denied. C.R.S. 1963, 39-16-2 and 3. It is implicit that the trial court shall give

careful consideration to the information supplied by the probation officer. The defendant has the right to be heard concerning matters in the report which he believes to be inaccurate or untrue. However, the statute does not contemplate that the probation officer shall be required to establish the matters reported in the probation report by evidence presented in accordance with the due process procedures required of a guilt trial on the merits of the case. As said in *Holdren v. People,* 168 Colo. 474, 452 P.2d 28, strict rules of evidence need not be adhered to.

■ Here, at the probation hearing in question, although represented by competent counsel and having been supplied a copy of the probation report, defendant did not, as he could have done, show that the information supplied to the court in the probation report was inaccurate or untrue. Under these circumstances, the court was entitled to rely upon the report as submitted. We cannot quarrel with the trial court's characterization of Wolford as a pusher who profited from his involvement in drug traffic, in view of the unrebutted evidence presented in the report to the court.

We do not consider *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326, as applicable here, where the issue in that case involved the Sex Offender's Act then in effect in Colorado. *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, likewise does not support Wolford's position. In *Townsend, supra,* the defendant did not have the benefit of counsel and the factual basis upon which sentence was imposed was materially false. Here, counsel was present and, in effect, admitted the accuracy of the probation report.

■ Wolford's further argument that the sentence constituted cruel and unusual punishment is predicated upon his assertion that he was denied due process of law. We find no merit to this argument, in view of our holding that procedural due process was in fact accorded Wolford. The sentence imposed was within the statutory limits and is not of such severity as to shock the conscience of the Court as is necessary to bring it within the constitutional proscription.

*Austin v. City and County of Denver,* 170 Colo. 448, 462 P.2d 600; *Normand v. People,* 165 Colo. 509, 440 P.2d 282.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE not participating.