The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 19, 2018

## 2018COA54

## No. 15CA1816, People v. Butcher — Criminal Law — Restitution; Criminal Procedure — Plain Error

Reviewing this restitution appeal for plain error, a division of
the court of appeals finds one obvious error involving the
calculation of postjudgment interest. However, exercising its
discretion granted by "may" in Crim. P. 52(b), the division affirms
because the error does not *seriously* affect the fairness, integrity, or
public reputation of judicial proceedings.

COLORADO COURT OF APPEALS        **2018COA54**

---

Court of Appeals No. 15CA1816
Teller County District Court Nos. 10CR105 & 11CR118
Honorable Edward S. Colt, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Michael Butcher,

Defendant-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE WEBB
Tow and Casebolt*, JJ., concur

Announced April 19, 2018

---

Cynthia H. Coffman, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Dayna Vise, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Often, when an appellate court identifies an obvious but unpreserved trial error, the court will reverse under the plain error doctrine of Crim. P. 52(b).  Yet, if the error does not *seriously* affect the fairness, integrity, or public reputation of judicial proceedings, may the court, exercising its discretion, still decline to reverse?  We answer this novel question in Colorado "yes," and do so here.

¶ 2    A jury convicted David Michael Butcher of two counts of securities fraud and two counts of theft from at-risk adults.  Butcher appeals only the trial court's amended restitution order, and on the sole ground that the court erred in its award of prejudgment and postjudgment interest.  But he failed to raise these alleged errors in the trial court, which limits relief to plain error.  Because the trial court's single obvious error — accruing postjudgment interest from the date of conviction rather than from the date of the operative restitution order — does not seriously affect the fairness, integrity, or public reputation of judicial proceedings, we exercise our discretion and affirm.

## I.  Background

¶ 3    At the sentencing hearing in February 2013, three months after Butcher's conviction, the prosecutor submitted a proposed

restitution order that included prejudgment and postjudgment interest. Attached to the proposed order were spreadsheets reflecting the prosecutor's calculations for each victim. Butcher requested a hearing, without stating any specific objection. The trial court agreed to delay the restitution hearing pending the conclusion of an upcoming trial in a related case.

¶ 4 But neither party pursued restitution following resolution of the related case. In January 2014, the trial court entered the prosecutor's proposed restitution order, in the principal amount of $122,000. The court gave Butcher fifteen days to file a written objection.

¶ 5 Fourteen months later, Butcher filed an objection to the restitution order, asserting that he was entitled to offsets. But the objection did not raise the amounts of prejudgment and postjudgment interest awarded. Despite Butcher's delay, the court held a restitution hearing in September 2015.

¶ 6 At the hearing, the parties addressed only whether the amount of principal should be reduced based on various offsets, including a portion of the investment that one of the victims had recouped by selling real property which Butcher had acquired with some of the

2

victims' money.  The court agreed that the principal should be reduced by $8395.44 and directed the prosecutor to submit a proposed amended restitution order.  Still, no one said anything about interest.

¶ 7    The prosecutor's proposed amended restitution order adjusted the amount of restitution to each victim, again including prejudgment and postjudgment interest.  The prosecutor also attached spreadsheets reflecting the calculations.  Butcher did not object to the amended restitution order, and the court entered it.

## II.  Applicable Law

¶ 8    When a defendant steals money from a victim, the victim is entitled to prejudgment interest on the restitution award, accruing from the date of the loss to the date of the restitution order.  *See Roberts v. People*, 130 P.3d 1005, 1006-10 (Colo. 2006).  Prejudgment interest at the rate of eight percent annually is reasonable.  *Id.* at 1010; *see also* § 5-12-101, C.R.S. 2017 ("If there is no agreement or provision of law for a different rate, the interest on money shall be at the rate of eight percent per annum, compounded annually.").  Prejudgment interest serves to make the

victim whole based on the loss of use of the money.  *Roberts*, 130 P.3d at 1009.

¶ 9     The restitution statute in effect at the time provided that victims were entitled to twelve percent annual postjudgment interest on their restitution awards.  *See* Ch. 318, sec. 2, § 18-1.3-603(4)(b)(I), 2002 Colo. Sess. Laws 1422.  Postjudgment interest serves to encourage expeditious payment of restitution.  *Roberts*, 130 P.3d at 1009.

¶ 10    Turning to the plain error standard, "[a] plain error is one that is both 'obvious and substantial.'"  *People v. Sandoval*, 2018 CO 21, ¶ 11 (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).  To warrant reversal, the error must have "undermined the fundamental fairness of the [proceeding] so as to cast serious doubt on the reliability of the judgment."  *People v. Davis*, 2015 CO 36M, ¶ 32 (citing *Miller*, 113 P.3d at 750).

¶ 11    In sentencing cases, our supreme court has reversed for plain error where "[t]he trial court's imposition of an aggravated direct sentence to community corrections based on judicial fact-finding without a stipulation to that judicial factfinding by the defendant is the kind of error that 'undermine[s] the fundamental fairness' of the

sentencing proceeding." *Sandoval*, ¶ 15 (quoting *Davis*, ¶ 32). *But see People v. Banark*, 155 P.3d 609, 611 (Colo. App. 2007) ("[W]e perceive no reasonable possibility, much less a reasonable probability, that defendant was actually prejudiced by the district court's [*Blakely*] error.").

### III. Butcher's Unpreserved Contentions on Appeal

¶ 12    For the first time on appeal, Butcher raises the following objections to the amounts of prejudgment and postjudgment interest awarded.

- The amount of prejudgment interest in the amended restitution order should be reduced based on the offsets to the principal.

- The prejudgment interest rate of eight percent should have applied to the period from the date of the loss to the date of the amended restitution order.

- The postjudgment interest rate of twelve percent should have applied only from the date of the amended restitution order.

- The interest should have been calculated as simple interest rather than compounded monthly.

5

## A. Did Butcher Waive These Objections?

¶ 13    According to the Attorney General, Butcher waived these objections, for two reasons. The record supports the first reason but the law does not support the second reason.

¶ 14    First, Butcher's current challenges to the awarded amounts of prejudgment and postjudgment interest would have applied with equal force to the prosecutor's original restitution request and the trial court's original restitution order. But he did not object to the amounts of prejudgment and postjudgment interest in either the prosecutor's original request or the court's original order. The record supports this assertion, except as to the offsets that arose after entry of the first order, which have been resolved.

¶ 15    Second, "[a] defendant waives his or her objections to the *amount* of restitution by failing to go forward with evidence when given the opportunity to do so." *People v. Martinez,* 166 P.3d 223, 224 (Colo. App. 2007) (emphasis added); *see also People v. Miller,* 830 P.2d 1092, 1094 (Colo. App. 1991) (same). While this question is closer, we decline to apply waiver because doing so would go beyond the rationale of *Miller,* 830 P.2d 1092.

¶ 16    The *Martinez* division did not find a waiver.  Instead, the division paraphrased *Miller*.  *See Martinez*, 166 P.3d at 224.  In *Miller*, the division said:

> A defendant has the right to be heard concerning matters in the presentence report or victim impact statement which she believes to be untrue.  This includes the amount of restitution.  However, if the defendant fails to show that the information is inaccurate or untrue, the trial court is entitled to rely upon the report or statement as submitted.  *Wolford v. People*, 178 Colo. 203, 496 P.2d 1011 (1972).  Additionally, a defendant waives her objection to the restitution amount by failing to go forward with evidence which would place that amount in issue when she is offered the opportunity to do so.  *People v. Powell*, 748 P.2d 1355 (Colo. App. 1987).

830 P.2d at 1094.

¶ 17    So, *Miller* stands only for the unremarkable proposition that where appellate review depends on factual findings and a defendant spurns the opportunity to make an appropriate record, the defendant waives appellate review.  *See, e.g., People v. Alameno*, 193 P.3d 830, 834 (Colo. 2008) (review of a suppression ruling calls for factual findings that appellate courts are not positioned to make); *People v. Huynh*, 98 P.3d 907, 913 (Colo. App. 2004) (same).

7

¶ 18    In contrast, Butcher's objections regarding the amount of interest awarded do not require further factual development.  All information necessary for appellate review appears in the spreadsheets attached to the initial and amended restitution orders.

¶ 19    In sum, we decline the Attorney General's invitation to find waiver and turn to Butcher's plea for plain error review.

B.  Should We Exercise Our Discretion to Reverse for Plain Error?

¶ 20    The Attorney General argues against plain error review, again on two grounds.  This time, the law and the record support the Attorney General on both grounds.

¶ 21    First, the Attorney General points out that the word "may" in Crim. P. 52(b) suggests plain error review is a matter of discretion, not of right.  *See Woldt v. People*, 64 P.3d 256, 269 (Colo. 2003) (explaining that the plain meaning of the word "may" usually indicates discretion).

¶ 22    True, our supreme court has never directly addressed the issue.[1]  But in *People v. Gingles*, 2014 COA 163, ¶ 32, the division

---

[1] In at least one older case, however, the supreme court has said it would "elect not" to address an unpreserved issue.  *Morse v. People*, 168 Colo. 494, 497, 452 P.2d 3, 5 (1969).

held that Crim. P. 52(b) affords "discretion to address errors that both are 'plain' and 'affect[] substantial rights.'" (Alteration in original.) *See also People v. Valencia*, 169 P.3d 212, 221 (Colo. App. 2007) ("Crim. P. 52(b) provides us with discretion to notice '[p]lain errors or defects' that 'were not brought to the attention of the court' . . . .") (citation omitted), *abrogated in part on other grounds by Brendlin v. California*, 551 U.S. 249 (2007).

¶ 23    Crim. P. 52(b) is very similar to its federal counterpart. *Compare* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."), *with* Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Because of this similarity, federal law interpreting the federal rule of criminal procedure is informative.[2] *See Warne v. Hall*, 2016 CO 50, ¶¶ 12-13 (noting the desirability of interpreting similar Colorado and federal

---

[2] "Because the rules are similar, and because the supreme court adopted Crim. P. 52(b) in 1961, seventeen years after Congress adopted Fed. R. Crim. P. 52(b), it seems clear that the Colorado rule was patterned after the federal rule." *People v. Greer*, 262 P.3d 920, 937 (Colo. App. 2011) (J. Jones, J., specially concurring).

9

rules similarly); *Crumb v. People*, 230 P.3d 726, 731 n.5 (Colo. 2010) (same).

¶ 24    The discretionary view aligns with United States Supreme Court precedent. The Court first "articulated the standard that should guide the exercise of remedial discretion under Rule 52(b) almost 70 years ago in *United States v. Atkinson*, 297 U.S. 157 . . . (1936)." *Nguyen v. United States*, 539 U.S. 69, 85 (2003). "Congress then codified that standard in Rule 52(b)." *Id.*

¶ 25    In *United States v. Olano*, 507 U.S. 725, 735 (1993), the Court said, "Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affect[s] substantial rights,' the court of appeals has authority to order correction, but is not required to do so." Then it discussed the principles that "guide the exercise of remedial discretion under Rule 52(b)" and noted that without those limiting principles "discretion . . . would be illusory." *Id.* at 736-37.

¶ 26    Following *Olano*, we conclude that relief under Crim. P. 52(b) is a matter of discretion, not of right.

¶ 27    Second, the Attorney General continues, exercising discretion should be informed by asking whether any errors "seriously affect the fairness, integrity or public reputation of judicial proceedings."

*United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *Atkinson*, 297 U.S. at 160). Yet, the parties have not cited a case, nor have we found one, in which our supreme court has expressly adopted or rejected this test.

¶ 28    A closer look shows that, on the one hand, in *Hagos v. People*, 2012 CO 63, ¶ 18, the court quoted the *Young* formulation. *See also Stackhouse v. People*, 2015 CO 48, ¶ 34 (Plain error requires reversal if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009))) (emphasis omitted). But, on the other hand, the court also said that plain error review leads to reversal if it "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (citation omitted).

¶ 29    Given these statements, one might ask whether our supreme court has simply collapsed the "seriously affects the fairness, integrity or public reputation of judicial proceedings" test into whether plain errors "cast serious doubt on the reliability of the judgment of conviction." One might even inquire whether the court

implicitly reasoned that *every* unreliable conviction has such a serious effect.

¶ 30     But a restitution error does not taint the underlying judgment of conviction. As the court explained in *Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008):

> [T]he revised statutory structure . . . undermines the continuing validity of our earlier conclusion that the amount of restitution must be part of a judgment of conviction. In fact, by specifying that an order of conviction need only include a determination whether the defendant is obligated to pay restitution, without designation of the amount, the General Assembly has made clear its intent that the amount of the defendant's liability no longer be a required component of a final judgment of conviction . . . . [B]y express legislative action, a subsequent determination of the amount of restitution owed by a defendant, as distinguished from an order simply finding her liable to pay restitution, has been severed from the meaning of the term "sentence," as contemplated by Crim. P. 32, and therefore from her judgment of conviction. Neither subsequent proceedings to determine, nor an order assessing, a specific amount of restitution directly affects that judgment.

So, looking no further than the "reliability of the judgment of conviction" test could suggest a categorical rule foreclosing plain error review of all errors involving the amount of restitution.

¶ 31    Our supreme court has never addressed plain error when faced with a restitution error.  In *People v. Ortiz*, 2016 COA 58, ¶ 13, the division "review[ed] [the] defendant's contention for plain error because he failed to argue in the district court that the state patrol was not a victim for restitution purposes."  Still, neither *Ortiz* nor any other court of appeals opinion answers the question whether *all* unpreserved but obvious errors in the amount of a restitution award demand plain error reversal.

¶ 32    But is trying to answer this question like a solution in search of a problem?  We know that mathematics is "an exact science." *Chartrand v. Brace*, 16 Colo. 19, 34, 26 P. 152, 157 (1891).  From that perspective, every computational error in a restitution award that is more than de minimus could be said to undermine the fundamental fairness of the sentencing proceeding.  And therein lies the problem.

¶ 33    Embracing hastily such a broad approach would ignore the limitation that plain error restricts an appellate court "to correct[ing] particularly egregious errors." *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987).  Yet, how do we draw a line between de minimus and "particularly egregious?"  To do so, we circle back to

whether errors in calculating interest on a restitution award seriously affect the fairness, integrity, or public reputation of judicial proceedings.[3]

¶ 34    Several federal circuits have rejected plain error claims that fail to meet the fourth element, without examining the other elements.  *See United States v. Maciel-Vasquez*, 458 F.3d 994, 996 (9th Cir. 2006) ("[The court] need not . . . construe condition [of supervised release for purposes of plain error review], because any error or prejudice caused by the district court's decision to impose this condition did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings."); *United States v. Keeling*, 235 F.3d 533, 538 (10th Cir. 2000) ("Even if the first three elements of the plain error test are satisfied, where the evidence on a misdescribed or omitted element of the offense is overwhelming,

---

[3] Specially concurring in *People v. Greer*, 262 P.3d 920, 938 (Colo. App. 2011), Judge Jones said, "under the current state of the law in Colorado, I do not have the authority to apply the fourth prong articulated in *Olano* to an unpreserved claim of error.  Whether that prong should be applied in plain error review under Crim. P. 52(b) is for the Colorado Supreme Court to decide."  In our view, however, our supreme court's citation of the *Young* formulation in *Hagos* and *Stackhouse* — both announced after *Greer* — leave us free to follow federal authority.

the fourth element, that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings, is not."); *United States v. Hunerlach*, 197 F.3d 1059, 1069 (11th Cir. 1999) ("Even if we were to assume that the district court committed plain error, . . . Appellant must show that the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'") (citation omitted).

¶ 35    Even so, in this case we eschew that approach because considering whether the trial court erred, and, if so, whether any error was obvious, shows that the relief to which Butcher would be entitled — while more than de minimus — is limited.  We apply the error and obviousness factors as follows.

- The original restitution order and the amended restitution order awarded identical amounts of prejudgment interest. Butcher now argues that the prejudgment interest in the amended restitution order should have been reduced to account for the offset to the principal based on the victim's sale of the property.  The record indicates that the victim recouped some of the investment in January 2015, which would have affected the amount of prejudgment interest, but

15

only if it had been calculated through the date of the amended order, some eight months later. *See Roberts*, 130 P.3d at 1009 (noting prejudgment interest is based on the loss of use of the stolen money). And because the prosecutor took this offset into account when calculating postjudgment interest, we discern no error, and therefore no plain error, on this issue.

- As for Butcher's argument that the interest should have been simple interest rather than compounded monthly, the prosecutor's proposed amended restitution orders list twelve percent as the "Rate of Interest" and "0.01" as the "monthly rate." As well, the interest accrual goes up slightly each month on the same principal amount. That interest was being compounded monthly, from the date of the conviction, was obvious. Still, the postjudgment interest statute in effect at the time did not specify whether interest should be simple interest or compounded interest. *See* 2002 Colo. Sess. Laws at 1422. (It has since been amended to specify that it should be simple interest. *See* § 18-1.3-603(4)(b)(I), C.R.S. 2017.) Thus, error, if any, would not have been so clear cut and obvious that the trial court should have addressed the issue

16

sua sponte. *See People v. Valdez*, 2014 COA 125, ¶ 27 (where case law on an issue is unsettled, an error is not obvious).

- Butcher also argues that the amended restitution order incorrectly calculated prejudgment interest (at eight percent) through the date of the conviction rather than the date of the amended restitution order and that postjudgment interest (at twelve percent) was calculated from the date of the conviction rather than after the date of the amended restitution order. The order recites that twelve percent interest was calculated "from the time of conviction." In terms of postjudgment interest, the statute at issue at the time provided that the defendant owes interest "from the date of the entry of the order" at the rate of twelve percent annually. 2002 Colo. Sess. Laws at 1422; *see also Roberts*, 130 P.3d at 1006 (Prejudgment interest should be awarded from the time the money is stolen "to the time a restitution award is entered."). Therefore, we conclude that the trial court erred, and the error was obvious. *See Sandoval*, ¶ 12 ("We have previously explained that '[f]or an error to be obvious, the action challenged on appeal ordinarily must contravene (1) a clear

statutory command; (2) a well-settled legal principle; or (3)

Colorado case law. *Scott v. People*, 2017 CO 16, ¶ 16.").[4]

¶ 36    Now, we are back to whether this one obvious error *seriously* affects the fairness, integrity, or public reputation of judicial proceedings. Viewing the facts through the lens of the following precedent shows three reasons why it does not.

- "Generally, courts have relied on the presence of 'overwhelming and uncontroverted evidence' of guilt as a basis for finding that a plain error did not seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Hayat,* 710 F.3d 875, 910 (9th Cir. 2013). The evidence of the principal amount Butcher owed as restitution, except for the modest offset that the trial court allowed, was uncontroverted.

---

[4] The Attorney General suggests that the trial court may have exercised its discretion to increase the rate of prejudgment interest from eight percent to twelve percent from the date of the conviction until the restitution orders were entered. The record in no way indicates that the trial court exercised its discretion in that way, nor did the prosecutor request that it do so. Rather, the record strongly suggests that prejudgment interest at the rate of eight percent was applied up to the date of the conviction, and that postjudgment interest at the rate of twelve percent was applied to the period following the date of conviction.

- "[A] sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings when a court's error results in imposition of a sentence which is not authorized by law." *United States v. Page*, 232 F.3d 536, 544 (6th Cir. 2000). Butcher has never disputed that the trial court had statutory authority to include interest in the restitution award.

- "When we apply the fourth element of plain error review to forfeited sentencing errors, the 'key concern' is 'whether correct application of the sentencing laws would likely *significantly* reduce the length of the sentence.'" *United States v. Figueroa-Labrada*, 720 F.3d 1258, 1268 (10th Cir. 2013) (emphasis added) (quoting *United States v. Cordery*, 656 F.3d 1103, 1108 (10th Cir. 2011)). The one obvious error at most increased the amount Butcher owes by about 12.27%. (The amended restitution order calculated interest from November 2012 until September 2015 at twelve percent rather than eight

percent, making the difference four percent over thirty-five months, compounded annually.)[5]

¶ 37    For these reasons, we discern no serious effect on the fairness, integrity, or public reputation of judicial proceedings.[6]

¶ 38    Lastly, what about *Ortiz*?  After all, we need say no more than that "one division of the court of appeals is not bound by a decision of another division."  *People v. Abu-Nantambu-El*, 2017 COA 154, ¶ 88.  Still, "we give such decisions considerable deference."  *People v. Smoots*, 2013 COA 152, ¶ 20.

¶ 39    *Ortiz* does not indicate whether the Attorney General had challenged plain error review, as she does here.  Perhaps for that

---

[5] The magnitude could be even less — accrual at eight percent rather than twelve percent for fifteen months (November 2012 through January 2014).  Butcher cites no authority supporting his assumption that reconsideration of the January order in September 2015 alters the "date of the restitution order" for purposes of treating further interest as postjudgment.  Nor have we found a Colorado statute or decision saying that a later modification of the amount of an otherwise valid judgment alters the date of the original judgment for this purpose.

[6] Of course, a mere interest error does not implicate "the stigma of a conviction and the burden of prison time."  *People v. Stewart*, 55 P.3d 107, 119 (Colo. 2002).  *But see People v. Hill*, 296 P.2d 121, 125 n.3 (Colo. App. 2011) (a defendant could have a legal malpractice claim against attorney who rendered ineffective assistance concerning restitution).

reason, the division did not ask whether the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. And in any event, the error alleged in *Ortiz* would have wiped out the entire restitution award, not just — as here — a small part of the interest.

¶ 40     In conclusion, we exercise our discretion under Crim. P. 52(b) and decline to disturb the postjudgment interest award for plain error.[7]

## IV.  Conclusion

¶ 41     The order is affirmed.

JUDGE TOW and JUDGE CASEBOLT concur.

---

[7] In saying this much, we take care to point out what we are not saying: that a restitution error of about $7500 to $15,000 — the magnitude of error at issue — could *never* satisfy the "seriously" test.  For example, such an error might constitute the entire restitution award or double the amount awarded.  We leave the resolution of such cases for another day.